# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTHONY JEROME MILLS,

    Petitioner,

    v.

WARDEN,

    Respondent.

Civil Action No.: JKB-17-1477

## MEMORANDUM OPINION

In his April 26, 2017, petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, petitioner Anthony Jerome Mills challenges his convictions for robbery and assault. ECF 1, 3 & 4. Respondent seeks dismissal of the petition without a hearing because it fails to present a meritorious claim. ECF 6. Mills filed a reply requesting a hearing on his claims. ECF 7. For the reasons stated below, the court dismisses the petition and denies Mills's request for a hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

### Prior State Proceedings

Mills was charged with robbery, second-degree assault, first-degree assault, first-degree burglary, third-degree burglary, and theft in connection with an incident that took place at the home of Maria Matamoros. ECF 6-6 at 19. Mills stood trial before a jury in the Circuit Court for Prince George's County on September 12 and 13, 2007. The evidence against him consisted of the victim's identification of Mills as the person who assaulted her in her home; no other evidence was presented at trial.

Ms. Matamoras testified that on March 18, 2002, she resided at 152 Ames Road in Silver Spring, Maryland.[1] ECF 6-4 at 36. Through an interpreter, Ms. Matamoras testified that as she exited her car in the parking lot of the apartment complex where she lived, she was approached by a Black man who asked her for directions; she told him how to get to University Boulevard in response to his inquiry. *Id.* at 38-39.

After speaking with the man in the parking lot, Ms. Matamoras went into her apartment and had been there less than five minutes when she heard a knock on the door. *Id.* at 39-40. Upon answering the door, she recognized the man as the same man who had approached her in the parking lot; he was now asking if he could use her phone. *Id.* at 40-41. Ms. Matamoras retrieved her cordless phone and brought it to the door, but the man asked her for a pen and paper as soon as she returned. *Id.* at 43. When she returned to the door after retrieving a pencil and paper, he punched her in the face and pushed the door open, causing her to fall backwards to the floor. *Id.* at 44. She described how he came into her apartment, grabbed her by her neck with both hands, lifted her feet from the floor, and began screaming at her to give him money. *Id.* at 47. Ms. Matamoras then testified that he dragged her through the apartment, still holding her by her neck, which made it difficult for her to breathe. *Id.* at 49-50. As they approached her bedroom, she described going limp and losing consciousness. *Id.* at 52. When she regained consciousness, she saw that her purse, which had been on her bed, was now gone as was her assailant. *Id.* at 52.

When asked about her ability to see her assailant, Ms. Matamoras explained that although he was wearing a baseball cap it did not obscure his face. ECF 6-4 at 41-2. When she was first

---

[1]    Her testimony that she lived in Silver Spring drew an objection from Mills's trial counsel because Silver Spring, Maryland, is located in Montgomery County, Maryland, and the criminal case was charged and prosecuted in Prince George's County. ECF 6-4 at 36-7. He argued that the trial court did not have jurisdiction over events that occurred in Silver Spring. *Id.* The objection was overruled after the State's Attorney indicated the police officer would testify that the address was located in Prince George's County. *Id.* at 37, *see also* ECF 6-6 at 21 (denial of motion to dismiss for lack of jurisdiction at close of case).

approached in the parking lot, it was approximately 1:00 p.m., and when he was standing at her

door asking to use the phone, there was full daylight coming through a large nearby window. *Id.*

at 41. She also testified that she was face to face with her assailant both when he was standing at

the door and when he came into her apartment and assaulted her. *Id.* at 40; 42-43. She further

stated that, due to the traumatic nature of the experience, she would never forget her assailant's

face. *Id.* at 61.

Approximately four months after the assault, Michael Rubin, a Prince George's County

police officer, came to Ms. Matamoras's apartment and showed her a photographic array. ECF 6-4

at 58. She identified Mills from the photo array. She testified that Rubin had translated the

instructions for viewing the array to Spanish and that she had understood she was not required to

identify anyone depicted in the array. *Id.* at 59-63. She testified that she wrote her initials and the

date under each photograph and circled one photograph because it was the picture of the man who

attacked her. *Id.* at 61.

The only other witness to testify for the State was Michael Rubin. ECF 6-4 at 80-101.

Rubin testified that Ms. Matamoras's apartment is located in Prince George's County. *Id.* at 81.

During the course of the investigation, Rubin stated that while fingerprints were recovered from

the crime scene, nothing of value was recovered and therefore none were matched to Mills or

anyone else. *Id.* at 84. Rubin located the photographs that were used to create the photographic

array and transferred them to another investigator familiar with computer graphics, who then

scanned the photos and altered the filler photos to make them look similar to the photo of Mills.

*Id.* at 86, 88. After the array was created, Rubin took it to Ms. Matamoras's apartment.

He explained that while he was not fluent in Spanish, he could speak it well enough at the

time that he understood her questions, could answer the questions, and was able to translate the

instructions for viewing the array into Spanish. ECF 6-4 at 90-91; 95. Once the instructions were understood, Rubin presented the photo array card to Ms. Matamoras face-down. Rubin testified that he asked Ms. Matamoras to write her initials and the date underneath each photograph to be certain she actually looked at every picture. *Id.* 96-97. On a separate document, she wrote "el sospechoso es el numero tres" which translates to "the suspect is number three." *Id.* at 98. Mills's picture was the photograph she chose. *Id.* at 99. Following her identification of Mills, Rubin completed an application for statement of charges against Mills. *Id.* at 101.

Cross-examination of Rubin focused on whether other leads for other possible suspects were investigated; whether fingerprints collected from the crime scene were used to develop other suspects; and whether photographs of the other suspects developed during the investigation were included in the photograph array. ECF 6-4 at 102-14. Rubin admitted that Ms. Matamoras described her assailant as being between the ages of 25 and 30, while Mills was almost 44 years old at the time of the offense. *Id.* He also stated during cross-examination that he did not know Mills's photograph was altered before being put into the array. *Id.* On redirect, Rubin explained that two other suspects had been eliminated as possibilities for committing the assault and robbery against Ms. Matamoras. *Id.* at 114-26.

Mills testified on his own behalf and was the only witness to testify for the defense. ECF 6-4 at 129-47. During his testimony, he claimed that he was in New Jersey with a lady friend the day before the offense, recalled they had gone to church together, and said he did not return home to Maryland until the afternoon of March 18, 2002. *Id.* at 130. Mills also recalled that he had injured his shoulder at work in February, a month prior to the date of the incident. *Id.* at 145. He claimed that the injury to his shoulder was still painful as of March 18, 2002, and he could not move his arm. *Id.* at 1464-7. In support of his claim that his shoulder had been injured, medical

4

records including records of Mills's attendance at physical therapy sessions were introduced and provided to the jury.

Under cross-examination, Mills could not recall the address of the woman he went to see in New Jersey (*id.* at 150); could not remember the name of the church, but said they arrived around noon (*id.* at 151); and could not recall the name of the hotel where he stayed (*id.* at 153). Mills did recall, however, that he left New Jersey on March 18, 2002, and arrived home around 12:30 or 1:00. *Id.* at 155. He maintained that when he arrived home, he went for a run wearing a sling on his arm and claimed that running helped his body heal faster. *Id.* at 156-57. He acknowledged that his shoulder injury did not prevent him from traveling to New Jersey, running regularly, or continuing to work as a truck driver. *Id.* at 147, 168.

After deliberating, the jury returned a verdict of guilty on all counts. ECF 6-6 at 81-83. On December 7, 2007, Judge Wallace sentenced Mills to serve 15 years for the robbery count; 10 years for second-degree assault, consecutive to the sentence imposed for robbery; and 20 years for first-degree burglary, consecutive to the first two sentences imposed. ECF 6-7 at 17. Mills was advised that because the crimes he was convicted of were crimes of violence, he would not be eligible for parole until he had served 50% of the time imposed. *Id.* at 17-18.

On direct appeal to the Court of Special Appeals, Mills raised the following issues:

1. Whether the trial court erred when venue was appropriate in Montgomery County instead of Prince George's County.

2. Whether the trial court erred in denying a motion to continue trial when an alibi witness was discovered but with insufficient time to procure her via subpoena for trial.

3. Whether the trial court erred in allowing the introduction of evidence to include an old, outdated photograph of Appellant with the notation "Not for identification," a suggestive photo array, and a Spanish-language interpreted document.

4. Whether it was prejudicial for the prosecutor to make statements about Appellant during closing arguments which were not part of the factual record and then present inappropriate information on Appellant at sentencing.

5. Whether Appellant's sentence was unreasonable and/or excessive.

6. Whether it was ineffective assistance of counsel for Appellant's trial counsel to forego investigation of the case, fail to research an alibi witness, and fail to object.

ECF 6-9 at 2.

In an unreported opinion[2] dated December 15, 2008, the Court of Special Appeals affirmed Mills's conviction. *Mills v. State*, Sept. Term 2007, No. 2585 (Md. Ct. Spec. App. Dec. 15, 2008) (unreported) at ECF 6-11. Mills filed a petition for writ of certiorari with the Maryland Court of Appeals, raising two issues: whether the trial court erred in failing to dismiss the case for improper venue; and whether the trial court erred in admitting an impermissibly suggestive photographic array. ECF 6-12 at 3. On April 10, 2009, the Court of Appeals issued an order denying certiorari. *Id.* at 1.

On February 19, 2010, Mills filed a petition for post-conviction relief in the Circuit Court for Prince George's County. Prior to a hearing on June 23, 2011,[3] Mills supplemented the petition for post-conviction relief three times. Following the first post-conviction hearing, the matter was continued at Mills's request and remained pending for four years. On January 25, 2015, Mills, through counsel, filed a "consolidated and amended petition for post-conviction relief," with the intent to "consolidate, clarify and amend all previous claims for relief." ECF 6-13. The petition raised 17 grounds for relief:

1. Petitioner's Sixth Amendment rights to counsel were violated when the Court denied Petitioner's Motion to Discharge Counsel and grant Petitioner a postponement in violation of Maryland Rule 4-215(e).

---

[2]    The substance of the opinion is addressed *infra* as appropriate to the issues raised in this court.

[3]    A transcript of the June 23, 2011, post-conviction hearing is not included in the record before this court.

2. Appellate counsel rendered ineffective assistance of counsel by failing to raise the issue of Petitioner's Sixth Amendment violation on appeal.

3. Trial counsel rendered ineffective assistance of counsel by failing to investigate and present exculpatory evidence with respect to Theresa Douglas (now and hereinafter Theresa Hobbs).

4. Trial counsel rendered ineffective assistance of counsel by failing to investigate and present exculpatory evidence with respect to the handwriting on a photo array by the victim.

5. Trial counsel rendered ineffective assistance of counsel by failing to investigate and interview persons present during the identification procedure by the victim.

6. Trial counsel rendered ineffective assistance of counsel by failing to object to an erroneous jury instruction.

7. Trial counsel rendered ineffective assistance of counsel by failing to properly cross examine the victim and challenge the identification of Petitioner.

8. Trial counsel rendered ineffective assistance of counsel by failing to properly cross examine Detective Rubin regarding his investigation.

9. Trial counsel rendered ineffective assistance of counsel by failing to give a sufficient closing argument.

10. Trial counsel rendered ineffective assistance of counsel by failing to move to dismiss the matter for improper venue in a timely manner.

11. Trial counsel rendered ineffective assistance of counsel by failing to challenge an in court identification by the victim.

12. Trial counsel rendered ineffective assistance of counsel by failing to obtain complete discovery.

13. Trial counsel rendered ineffective assistance of counsel by failing to properly prepare the Petitioner to testify.

14. Trial counsel rendered ineffective assistance of counsel by failing to effectively argue for a postponement.

15. Violation of Brady by failing to provide defense counsel with all exculpatory evidence with respect to fingerprints that did not belong to Petitioner.

16. Violation of Brady by failing to alert defense that Detective Rubin initialed the victim's photo array identifications on her behalf.

17. The sentence imposed is illegal due to the ambiguity of the charging document with respect to robbery and assault and whether they are charged independently or if assault is a lesser included offense to robbery.

ECF 6-13.

A second post-conviction hearing was held on February 12, 2015. ECF 6-8. A decision[4] denying all but one ground for post-conviction relief was issued on April 30, 2015. ECF 6-14. The sole ground upon which relief was granted concerned Mills's claim that his robbery and assault charges should have merged; the post-conviction court found the charges should have merged and ordered Mills to be resentenced.[5] *Id.*

Mills filed an application for leave to appeal the denial of post-conviction relief to the Maryland Court of Special Appeals on May 26, 2015, which he supplemented twice. ECF 6-15. His application raised three issues:

1. Whether trial counsel was ineffective for failing to investigate and present exculpatory evidence with respect to the handwriting identifying Mills on a photo array.

2. Whether trial counsel was ineffective for failing to move to dismiss the matter for improper venue in a timely manner.

3. Whether Mills was denied his right to counsel of choice pursuant to the Sixth Amendment and Maryland Rule 4-215(e).

ECF 6-15 at 3.

---

[4]    The substance of the post-conviction court's decision is addressed *infra* as appropriate to the issues raised in this court.

[5]    Nothing in the record before this court concerns whether Mills was resentenced as required by the post-conviction court.

On March 10, 2017, Mills's application was denied. ECF 6-16. The mandate issued on April 10, 2017. *Id.* His petition for writ of habeas corpus was filed in this court on May 30, 2017. ECF 1.

## Claims Raised in this Court

By his petition in this court, Mills claims that he is entitled to federal habeas relief because there was police misconduct in connection with the testimony by Michael Rubin that the handwriting on the photo array and a related document belonged to the victim. ECF 3 at 11-12. He adds to this claim that trial counsel was ineffective for having failed to investigate the source of the handwriting. *Id.* at 12. His second claim concerns trial counsel's failure to raise the issue of improper venue in a timely manner and to cross-examine Rubin on the basis of his opinion that the victim's apartment was located in Prince George's County. *Id.* at 17-18. Mills's third claim, which he frames as a denial of compulsory process, concerns the post-conviction court's denial of his request to call forensic handwriting experts as witnesses to establish that the handwriting on the photo array documents belonged to Michael Rubin and to introduce medical records belonging to the complaining witness that indicated the victim's nose was broken by her husband in 2006-07. *Id.* at 23-24. His final claim is that the trial court denied his Sixth Amendment right to "choose counsel" when he was not permitted to discharge counsel, which should have been permitted given the reasons cited by Mills for his desire to discharge counsel. *Id.* at 19-21. He adds that appellate counsel was ineffective for failing to raise this claim in his direct appeal. *Id.*

## Applicable Legal Standard

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh*

*v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011), for proposition that state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

Each of Mills's claims concerns in part a Sixth Amendment allegation of ineffective assistance of counsel. To establish such a claim, Mills must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that

the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.

*Id.* at 696.

Because the instant petition is subject to the provisions of the federal habeas statute, 28

U.S.C. § 2254, in order to obtain relief on his ineffectiveness claims, the petitioner must show that

the adjudication of such claims at the state court level

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(Supp.1997). The statute further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland, supra,* "a state court conclusion that counsel

rendered effective assistance of counsel is not a finding of fact binding on the federal court to the

extent stated by [former] 28 U.S.C. § 2254(d) [now § 2254(e)(1)]." *Id.* at 698. Rather, "although

state court findings of fact made in the course of deciding an ineffectiveness claim are subject to

the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components

of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that

§ 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered

effective assistance of counsel, and this Court may not grant relief on this claim as long as the state

court denied the claim based on a reasonable application of the *Strickland* standard to the facts

presented in the state court proceeding.

12

**Analysis**

**I.    Police Misconduct and Ineffective Assistance of Trial Counsel**

Mills asserts in his petition that Michael Rubin forged information on the photographic array and fraudulently wrote incorrect information on police documents so that he could "deliberately [prove] perjured testimony." ECF 3 at 5. His claim appears to focus on the testimony of both Rubin and Ms. Matamoras, which he states were contradictory regarding who wrote Ms. Matamoras's initials on the photo array sheet. *Id.* at 11.

This claim was presented to the state post-conviction court as a *Brady*[6] claim. In analyzing the claim, the post-conviction court noted that under *Brady*, "[s]uppression or failure to produce evidence favorable by prosecution [*sic*] to an accused upon request violates due process if the evidence is material to guilt or to punishment." ECF 6-14 at 6 (citing *Brady*, 373 U.S. at 83, *see also United States v. Bagley*, 473 U.S. 667, 675 (1985) (*Brady* rule is based on the requirement of due process)). A successful *Brady* claim requires the petitioner to establish that the evidence at issue is favorable to the defense and that the unavailability of the evidence calls into question the result of the trial. *Bagley*, 473 U.S. at 678. The Supreme Court has made it clear that there is no distinction between exculpatory evidence and impeachment evidence in the context of a *Brady* analysis. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). However, the guilty finding need not be overturned unless suppression of the impeachment evidence so limited the defense's ability to cross-examine an accusing witness that "its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

The post-conviction court denied relief on this claim because Mills "did not put forth any evidence that supports this allegation." ECF 6-14 at 9. The alleged conflict in testimony, which

---

6       *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

13

Mills concludes proves Rubin and/or Ms. Matamoras lied on the stand, did not concern a matter that due to its absence calls into question the result of the trial. Whether Rubin or Ms. Matamoras made the marks on the photo array is at best impeachment evidence that would have been inconsequential given Ms. Matamoras's unequivocal identification of Mills as her assailant during the photo array presentation and in court. Further, it is clear that the trial took place approximately five-years after the offense occurred; a seeming lapse of memory as to who wrote the victim's initials on the photo array or marked the questionnaire "yes or no" is not the exculpatory evidence contemplated by *Brady* and its progeny. The post-conviction court's denial of relief on this portion of the claim survives the deferential scrutiny required.

Mills's ineffective assistance of counsel claim in the context of the handwriting issue (*see* ECF 3 at 12) was also rejected by the post-conviction court. The court observed,

> Petitioner alleges trial counsel failed by insufficiently investigating the handwriting on the photo array identifying the Petitioner. Petitioner failed to introduce any evidence to suggest this alleged failure even occurred or caused prejudice and has failed his burden of proof. Consequently, the Court denies relief on this allegation.

ECF 6-14 at 11. It is axiomatic that an alleged failure by trial counsel to investigate a matter of no consequence to his client, such as evidence that does not impact on the fairness of the trial, does not constitute ineffective assistance of counsel. *See Horne v. Peyton*, 356 F.2d 631 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal without any showing of harmful consequences). The post-conviction court's analysis on this portion of the claim also survives scrutiny.

## II.     Improper Venue and Ineffective Assistance of Trial Counsel

At his post-conviction hearing, Mills introduced evidence that established the victim's apartment where the crimes occurred is actually located in Montgomery County, Maryland.

14

ECF 6-8 at 46. Mills was arrested and charged by the Prince George's County police and stood

trial in the Circuit Court for Prince George's County. His witness conceded that the road on which

the apartment complex is located is in Prince George's County, but the apartment is actually on

the other side of the county line.[7]  *Id.* at 47.

There is no dispute that trial counsel failed to preserve this issue for appellate review and

erroneously argued the matter as one of lack of jurisdiction, not improper venue. *See* ECF 6-11

at 3 (Court of Special Appeals opinion noting that venue was never raised in pretrial omnibus

motion). At the post-conviction hearing, trial counsel testified that he mistakenly viewed the issue

as one concerning jurisdiction and intentionally did not raise it until after the jury was empaneled

so that the case would be dismissed, jeopardy would have attached, and Mills could not be

prosecuted for the charges in a different court. ECF 6-8 at 28-29. He also admitted that he did not

investigate the address location and therefore could not challenge Rubin's testimony that the victim

lived in Prince George's County. *Id.* at 15-16.

The post-conviction court denied relief on the claim that trial counsel was ineffective for

making a timely motion regarding venue. ECF 6-14 at 14-15. The court compared trial counsel's

admitted failure regarding the venue issue to the facts in *Bowers v. State*, 578 A.2d 734, 736 (Md.

---

[7]      In response to this argument at the post-conviction hearing the State cited Md. Code Ann., Crim. Proc. § 4-201(g) in support of the position that venue was in fact proper in Prince George's County. ECF 6-14 at 71-72. The statute states:

> A prosecution for a crime may be brought in the county in which process for the arrest and prosecution of the defendant is first issued if:
>
> (i) the crime was committed at the boundary between counties; or
> (ii) the boundary is so uncertain or the site of the crime is so near to the boundary that it is doubtful in which county the crime was committed.
>
> (2) To establish the venue alleged in the charging document, the State need only prove that a set of facts in paragraph (1)(i) or (ii) of this subsection is true.

Md. Code Ann., Crim. Proc. § 4-201(g).

1990) where trial counsel was found to be ineffective "because he gave a deficient opening, cursory closing, failed to zealously and loyally represent his client, and was negligent in his cross-examination of a key witness." ECF 6-14 at 14. In Mills's case, however, the singular failure by trial counsel was viewed in light of counsel's testimony and the court found "that trial counsel executed what he believed to be sound trial strategy." *Id.* at 15. The court further reasoned:

> Trial counsel testified he believed, albeit incorrectly, jurisdiction and venue were interchangeable issues. Victory is not a factor in determining the effectiveness of counsel. Had counsel fully grasped the difference between jurisdiction and venue, venue may have possibly been moved to Montgomery County and whether [Mills] would have fared better in Montgomery County calls for speculation that this court will not engage in. Unfortunately for [Mills], Prince George's County Circuit Court has jurisdiction over the matter, thus the trial court's ruling in favor of the state was proper. [Mills] has failed to prove his burden and consequently, the Court denies relief on this allegation.

ECF 6-14 at 15.

The post-conviction court's conclusion that Mills failed to demonstrate prejudice resulting from the deficiency of trial counsel is without error and therefore federal habeas relief on this claim must be denied.

## III.    Denial of compulsory process

This claim was presented to the post-conviction court in the context of a Sixth Amendment ineffective assistance of counsel claim and is analyzed as such here.[8]  Mills explains that forensic handwriting experts would have testified that the handwriting on the photo array did not belong to the victim as was alleged at trial. ECF 3 at 23. He states that there was conflicting testimony at trial regarding who wrote what, where, and who said what on the photo array, and the experts would have testified that the handwriting belonged to Rubin, not Ms. Matamoras. *Id.* In Mills's

---

[8]    To the extent that Mills is raising a claim not heretofore considered by the State courts, the claim is unexhausted and may not be considered by this court in the context of a federal habeas claim. *See* 28 U.S.C. § 2254(b) and (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).

view of the case, the testimony would have been important because the victim did not speak English, Rubin did not speak fluent Spanish, and the victim's identification of Mills as assailant was the key to the prosecution's case. *Id.*

Mills also claims he should have been permitted to call Ms. Matamoras as a witness because her trial testimony stating that $500 was stolen conflicted with her statement to police that $150 was stolen. ECF 3 at 23-24. He also claims he should have been allowed to introduce her medical records as evidence because it would have established she did not go to the hospital for the injury to her nose before the trial but had surgery on her nose later. *Id.* He asserts the hospital records note that the damage to her nose was sustained in 2006 or 2007 when her husband broke her nose, which establishes in his view that the testimony at trial that her nose was broken by her assailant was false. *Id.*

As noted above in the context of Mills's first claim, the failure by trial counsel to investigate the source of the handwriting on the photo array was not deficient performance, nor did such a failure result in prejudice to Mills. As Mills himself notes, the evidence against him was the identification of him as the assailant by Ms. Matamoras; whether she wrote her initials on the photo array or Rubin did it does not impact on the strength of her identification testimony both in court and when viewing the photo array. The post-conviction court's finding that trial counsel was not ineffective in this regard survives scrutiny.

The remainder of this claim regarding the origin of one of the victim's injuries and whether she sought medical attention for a broken nose was not raised as a claim in the state courts. *See* ECF 6-13 (post-conviction petition). To the extent Mills could have raised it as a basis for an ineffective assistance of counsel claim, but failed to do so, the claim is procedurally defaulted. *See Murch v. Mottram*, 409 U.S. 41, 46 (1972) (procedural default for failure to raise claim during

post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to raise claim when seeking leave to appeal denial of post-conviction relief).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent.[9] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard v. Pruitt*, 134 F.3d 615, 620 (1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Testimony at trial established that the assailant punched Ms. Matamoras in the face and also choked her into unconsciousness. ECF 6-4 at 44, 52. To the extent that evidence might have been available to establish she did not seek medical attention for the injury sustained to her nose at the time of the assault, or that her nose was broken at a later date by someone else, that evidence would not negate the additional assault that took place. By the nature of the claim itself, it is clear that Mills cannot establish prejudice with regard to this portion of the claim; even assuming one

---

[9]     Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

portion of the assault did not occur, the testimony regarding the subsequent assault remains intact. No fundamental miscarriage of justice occurs in this instance if the claim is not permitted to proceed.

## IV.    Sixth Amendment Right to Choose Counsel

In his final claim, Mills asserts the trial court denied him the right to discharge counsel when his request for a continuance was denied and, further, claims that appellate counsel was ineffective when he failed to raise this issue on direct appeal. ECF 3 at 19-21. Mills explains that he hired Thomas Mooney to represent him at trial, but it was his associate John Pikulski who visited Mills at the detention center and appeared as counsel at all proceedings.[10] *Id*. at 19. Although Mills attempted to contact Mr. Mooney repeatedly, he was unable to speak with him prior to trial. *Id*. He claims he provided Mr. Pikulski with the name of his alibi witness, Theresa Douglas, in advance of trial, but Mr. Pikulski's request for a postponement on September 12, 2007, the day trial was set to begin, was denied. *Id*. at 19-20.

After appearing before Judge Whalen to request the postponement (*see* ECF 6-5, postponement transcript), Mr. Pikulski indicated to the trial judge that Mills wanted to discharge him as counsel. ECF 6-4 at 4. Mills takes issue with the trial court's failure to grant a continuance after he advised the judge that he did not believe Mr. Pikulski was prepared for trial and expressed his concern about an incident that occurred at the suppression hearing. ECF 3 at 20. With regard to Mr. Pikulski's preparation for trial, Mills told the trial judge that he had provided counsel with the name of his alibi witness, but Mr. Pikulski advised he had no recollection that Mills had done so. ECF 6-4 at 5-6. He also noted that the information he had provided to Mr. Pikulski concerning

---

[10]    Mr. Pikulski did in fact represent to the court that he was standing in for Mr. Mooney at two pretrial proceedings. *See* ECF 6-2 at 2 (Suppression Hearing); and ECF 6-3 at 2 (Request for Postponement). On the first day of trial, however, Mr. Pikulski did not indicate he was standing in for Mr. Mooney. ECF 6-4 at 4.

the injury to his shoulder and his treatment by a doctor was not acted upon by Mr. Pikulski until the eve of trial. *Id.* at 6, 9.

Mills also explains in his petition that he was brought to the court room for the suppression hearing in prison-issued clothes wearing restraints where he was seated at counsel table next to a Sheriff's deputy when Mr. Pikulski left the courtroom and never returned despite his assurance he would. *Id.* While waiting for counsel's return, Mills states that Ms. Matamoras came into the courtroom with Michael Rubin and the State's Attorney, Donneka Lewis, all of whom sat in the gallery at the back of the courtroom. *Id.* At that time, Ms. Matamoras observed Mills in the courtroom and identified him as her assailant. *Id.* Mills characterizes the incident as Mr. Pikulski tricking him into a one-man lineup for the benefit of the State. *Id.*, *see also* ECF 6-4 at 6-7 (trial transcript).

Mr. Pikulski explained to the trial court that, on the morning of the suppression hearing, he was required to go into a different courtroom for unrelated proceedings. ECF 6-4 at 6. Mills later informed him that "some lady had identified [him]" while he was waiting in the courtroom. *Id.* at 8. Mr. Pikulski explained to the court that the photo array was being litigated at the suppression hearing[11] and he had expressed his concerns to the State's Attorney that the victim would not be able to identify Mills. *Id.*

At the post-conviction hearing, this issue was addressed as two distinct claims. The first, whether the trial court abused its discretion when it did not permit Mills to discharge trial counsel, was addressed with reference to Maryland law requiring a three-step process once it is determined the accused wishes to discharge counsel. ECF 6-14 at 18-20. The post-conviction court explained:

---

[11]     Despite Mills's implication that Ms. Matamoras's presence in the courtroom was a deliberate effort to bolster the State's case, it is clear she was there for the purpose of testifying at the suppression hearing. *See* ECF 6-2 at 3-18 (suppression hearing transcript, testimony of Maria Matamoras).

As long as the court can reasonably conclude that the defendant seeks to discharge his counsel, the court should engage in a three-step process. *Joseph [v. State]*, 988 A.2d [545,] at 551 [(Md. Ct. Spec. App. 2010)] quoting *Hawkins v. State*, 747 A.2d 759, 764 (Md. Ct. Spec. App. 2000). All that is necessary to trigger this right is that the court be "put on notice of a defendant's desire to discharge counsel." *Joseph*, 988 A.2d at 553. The court should "first ask the defendant why he wishes to discharge counsel, give careful consideration to the defendant's explanation, and then rule whether the explanation offered is meritorious." *Id.* If the reason given is meritorious, a court is "obligated to grant the request and give [the defendant] time to retain new counsel." *Id.* If the reasons are not found to be meritorious, a court may proceed in one of three ways: "(1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation." *Id.* The trial court may use its discretion to determine if the reasons for wanting discharge are meritorious. *See generally State v. Campbell*, 870 A.2d 217 (Md. 2005).

ECF 6-14 at 18-19. The post-conviction court then acknowledged that Mills had unequivocally notified the court of his desire to discharge counsel and that the trial court's observation that "the only issue for you is whether you're representing yourself or whether M[r]. Pikulski is representing [you]" implied that Mills's reasons for discharging counsel were not meritorious. *Id.* at 19. The post-conviction court further noted that "[t]he trial court continue[d] on to inquire and edify [Mills of] the full gravity of discharging his attorney and proceeding *pro se*" and Mills withdrew his request. *Id.* at 20. The standard set forth by the post-conviction court is designed to ensure that a criminal defendant's constitutional right to proceed without counsel is invoked voluntarily and intelligently. *See Faretta v. California*, 422 U.S. 806, 807 (1975) (Sixth Amendment right includes right of self-representation where voluntarily and intelligently invoked). Here, Mills withdrew any conceivable invocation of that right when he agreed to retain Mr. Pikulski as counsel. Further, the rule is in place to ensure that the request to discharge counsel is not a subterfuge for dilatory tactics.

While there is a Sixth Amendment right to counsel of choice, the right to choose one's own counsel is not unlimited. *See Wheat v. U.S.*, 486 U.S. 153, 158 (1988) (listing limitations on counsel of choice by criminal defendants). Where counsel of a criminal defendant's choosing is erroneously disqualified or removed, the Sixth Amendment is violated, and no prejudicial effect need be shown as the error is structural and requires reversal of the conviction. *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006). Viewed as a whole, the colloquy between Mills and the trial court regarding Mr. Pikulski's performance does not reveal such an error. Mills acknowledged that Mr. Pikulski was a good attorney (ECF 6-4 at 5) and focused most of his objection to counsel's performance on his perception that Mr. Pikulski had not spent enough time on the case and did not appear to place as much importance on the outcome as Mills did (*id.* at 5, 9). The post-conviction court's conclusion that there was no trial court error resulting in a Sixth Amendment violation provides no grounds for federal habeas relief.

The second part of this claim – that appellate counsel was ineffective for failing to raise the Sixth Amendment claim – also fails to state a viable basis for federal habeas relief. The post-conviction court applied the two-prong analysis required by *Strickland* to Mills's claim and observed that in the context of a claim against appellate counsel's performance, the burden of proof is so high that even the failure by "'counsel, without the express consent of the defendant, had failed to file an appeal at all' does not render counsel's performance *per se* deficient." ECF 6-14 at 18 (quoting *State v. Gross*, 760 A.2d 725, 741 (Md. Ct. Spec. App. 2000)). With regard to the failure to raise this claim, the post-conviction court found that Mills had failed to "prove (1) any prejudice occurred based on appellate counsel's failure; or (2) that the issue on appeal would have probably succeeded." *Id.* The analysis is without error; appellate counsel's job is to select the bases for appeal that are most likely to render a good result. "The mind of an appellate judge is

habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one . . . ." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). The failure to include the Sixth Amendment claim was not deficient and does not present a claim for federal habeas relief.

## Conclusion

Having found no basis for federal habeas relief, the court shall dismiss the petition for writ of habeas corpus. Further, a certificate of appealability shall not issue. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds Mills has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2). Mills may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order follows.

Dated this ___21___ day of ___Oct___, 2019 .

FOR THE COURT:

James K. Bredar
Chief Judge